UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD BROMLEY,

    Plaintiff,

    v.

ANDREW SAUL, Commissioner of Social Security,[1]

    Defendant.

No. 2:18-cv-2718 DB

ORDER

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2] Plaintiff's motion argues that the Administrative Law Judge's treatment of the medical opinion evidence, subjective testimony, and step five conclusion were erroneous.

////

---

[1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019. See https://www.ssa.gov/agency/commissioner.html (last visited by the court on July 30, 2019). Accordingly, Andrew Saul is substituted in as the defendant in this action. See 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] Both parties have previously consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c). (See ECF Nos. 7 & 8.)

1

For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for the payment of benefits.

## PROCEDURAL BACKGROUND

In June of 2015, plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), alleging disability beginning on October 10, 2014. (Transcript ("Tr.") at 15, 169-74.) Plaintiff's alleged impairments included learning disability, back pain, and paranoia. (Id. at 193.) Plaintiff's application was denied initially, (id. at 103-07), and upon reconsideration. (Id. at 111-15.)

Plaintiff requested an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on May 19, 2017. (Id. at 33-74.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 33-35.) In a decision issued on December 1, 2017, the ALJ found that plaintiff was not disabled. (Id. at 28.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.
>
> 2. The claimant has not engaged in substantial gainful activity since October 10, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: intellectual disability, unspecified learning disorder, degenerative disc disease of the cervical and lumbar spines, and mild degenerative disc disease of the thoracic spine with scoliosis. (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is able to lift and carry 10 pounds frequently and 20 pounds occasionally; he is able to sit for six to eight hours of an eight hour workday; he is able to stand and/or walk for six to eight hours of an eight hour workday; he requires the ability to briefly change positions from sitting to standing, and vice versa, every thirty minutes, but he is able to remain at the work station while doing so; he is precluded from climbing ladders, ropes, and scaffolds; he is

2

|   |   |
|---|---|
| 1 | limited to occasional climbing of ramps and stairs; he is limited to occasional stooping, kneeling, crouching, and crawling; he is able to perform simple, repetitive tasks; he is limited to no more than occasional in-person interaction with the public[.] |
| 2 | |
| 3 | |
| 4 | 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565). |
| 5 | 7. The claimant was born [in] 1964 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563). |
| 6 | |
| 7 | 8. The claimant has a marginal education and is able to communicate in English (20 CFR 404.1564). |
| 8 | |
| 9 | 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
| 10 | |
| 11 | |
| 12 | 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)). |
| 13 | |
| 14 | 11. The claimant has not been under a disability, as defined in the Social Security Act, from October 10, 2014, through the date of this decision (20 CFR 404.1520(g)). |
| 15 | |

(Id. at 17-28.)

On August 10, 2018, the Appeals Council denied plaintiff's request for review of the ALJ's December 1, 2017 decision. (Id. at 1-5.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on October 9, 2018. (ECF. No. 1.)

**LEGAL STANDARD**

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin.,

466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff's pending motion argues that the ALJ committed the following four principal errors: (1) the ALJ's treatment of the medical opinion evidence constituted error; (2) the ALJ's treatment of the subjective testimony constituted error; (3) the ALJ improperly rejected lay

////

////

4

witness testimony; and (4) the ALJ's step-five finding was not supported by substantial evidence. (Pl.'s MSJ (ECF No. 14) at 9-15.[3])

**I.     Medical Opinion Evidence**

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.) Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

**A.     Dr. Jacklyn Chandler, Ph. D**

Plaintiff first challenges the ALJ's treatment of the examining opinion of Dr. Jacklyn Chandler. (Pl.'s MSJ (ECF No. 14) at 9-10. The ALJ discussed Dr. Chandler's opinion, stating:

---

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

5

> In June 2015 Jacklyn L. Chandler, Ph.D.[4] performed a psychological disability evaluation on the claimant. Due to difficulty with reading and writing, Dr. Chandler relied on the claimant's sister to provide some information. The claimant reported that he was independent with activities of daily living, and he could take the bus by himself, drive a car, wash dishes, do laundry, prepare meals, shop for groceries unattended, and dress and groom himself. On examination, the claimant appeared unkempt and he had limited vocabulary and compromised insight and judgment. Furthermore, the claimant demonstrated moderately to markedly decreased attention and concentration, he worked at a slow pace, and he was unable to read and complete his history form. However, the claimant had linear thought processes, logical thought content, and full affect. Additionally, he was cooperative, he displayed adequate effort, and he displayed adequate persistence.
>
> Dr. Chandler administered the WAIS-IV to the claimant to assess his cognitive functioning. The claimant scored a 70 in verbal comprehension, 77 in perceptual reasoning, 69 in working memory, 71 in processing speed, and 67 overall. The claimant's verbal comprehension, perceptual reasoning, and processing speed scores were in the borderline range and his working memory score and overall IQ were in the extremely low range. The claimant was also assessed with the WSM-IV to test his memory and a Trail-Making Test to test his visual scanning speed and concentration. The claimant's performance on the WSM-IV fell within the average range for all four categories suggesting adequate memory functioning. His performance on part A of the Trail-Making test fell in the moderate impaired range and his performance on part B fell in the markedly impaired range suggesting difficulties in the areas of visual scanning speed and concentration.

(Tr. at 23.)

The ALJ afforded Dr. Chandler's opinion only "partial weight," stating:

> Jacklyn L. Chandler, Ph.D. opined that the claimant is likely to have mild to moderate difficulty understanding, remembering, and carrying out simple job instructions, marked difficulty with complex instructions, moderate to marked difficulty maintaining attention and concentration, mild to moderate difficulty functioning under normal stress in a work setting, and moderate difficulty relating to and interacting with supervisors, coworkers, and the public. Additionally, the claimant's difficulties in reading, spelling, and arithmetic are likely to interfere with tasks requiring these skills. The undersigned affords Dr. Chandler's opinions partial weight. There is no medical evidence of record that supports the claimant's allegations and the claimant's behavior was within his volitional

---

[4] The opinions of medical specialists regarding the specialist's area of expertise "are given more weight than the opinions of a nonspecialist." Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); see also Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) ("Each rheumatologist's opinion is given greater weight than those of the other physicians because it is an opinion of a specialist about medical issues related to his or her area of specialty.").

> control. Moreover, the claimant's linear thought processes, logical thought content, and cooperative attitude, adequate effort and persistence, adequate memory functioning, and ability to take the bus by himself, drive a car, wash dishes, do laundry, prepare meals, shop for groceries unattended, and dress and groom himself, are inconsistent with a finding that the claimant has marked limitations maintaining attention and concentration, moderate difficulties understanding, remembering, and carrying out simple job instructions, and moderate difficulties functioning under normal stress in a work setting.

(Id. at 26.)

To assert in a vague and conclusory manner that there was "no medical evidence of record" to support Dr. Chandler's opinion, before simply listing evidence the ALJ believed undermined Dr. Chandler's opinion—such as plaintiff's "cooperative attitude," and ability to "wash dishes"—was erroneous. (Id.)

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988); see also Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999) ("The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence."); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) ("Broad and vague" reasons for rejecting the treating physician's opinion do not suffice).

Moreover,

> [c]ourts have recognized that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of mental illness . . . [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology.

////

Averbach v. Astrue, 731 F.Supp.2d 977, 986 (C.D. Cal. 2010) (quoting Sanchez v. Apfel, 85 F.Supp.2d 986, 992 (C.D. Cal. 2000)).

Nonetheless, Dr. Chandler's opinion was supported by medical evidence of record. In this regard, Dr. Chandler's examination included testing that provided objective evidence in support of the opinion. Specifically, "WAIS-IV" testing found plaintiff's "Verbal Comprehension Index," "Perceptual Reasoning Index," and "Processing Speed Index" score fell "within the borderline range." (Tr. at 270.) Plaintiff's "Working Memory Index" and "Full Scale IQ" scores fell within the "extremely low range." (Id.) These scores, and "[c]linical observation," suggested that plaintiff had "verbal intellectual ability within the borderline to extremely low range and visuomotor/visuospatial ability within the borderline range with moderately to markedly decreased attention and concentration and moderately to markedly impaired processing speed."[5] (Id.)

Plaintiff's score on "Part A of the Trail-Making Test . . . was within the moderately impaired range," while the score of the "Part B" test "was within the markedly impaired range." (Id.) These scores were consistent with plaintiff having "difficulties in the areas of visual scanning speed and concentration." (Id.)

With respect to the ALJ's reliance on plaintiff's ability to take the bus, drive a car, wash dishes, do laundry, prepare meals, shop for groceries, dress, and groom

> [t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ... and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be

---

[5] Even defendant acknowledges that plaintiff "had borderline intellectual functioning" and could not "perform complex or higher functioning mental functions." (Def.'s MSJ (ECF No. 17) at 7.)

disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); see also Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014), 759 F.3d at 1016 (citation omitted) ("[I]mpairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.").

Accordingly, the court finds that the ALJ failed to offer a specific and legitimate, let alone clear and convincing, reason for rejecting Dr. Chandler's opinion.

### B. Dr. Alberto G. Lopez, M.D.

Plaintiff also challenges the ALJ's treatment of the examining opinion offered by Dr. Alberto Lopez. (Pl.'s MSJ (ECF No. 14) at 10-11.) The ALJ discussed Dr. Lopez's opinion, stating:

> Two years later, in April 2017, Alberto G. Lopez, M.D. completed an independent medical evaluation at the request of the claimant's attorney. The claimant and his sister reported that the claimant could not read signs, he largely relied on his sister to care for him, he kept to himself, and his sister must encourage him to bathe and change clothes. On examination, the claimant appeared disheveled and agitated with incoherent speech. He also exhibited unusual thought content and reported that he was followed at times. Moreover, he only recalled one out of three objects with delay, he was unable to perform serial sevens or calculate change, and he could not identify similarities.

(Tr. at 23-24.)

The ALJ afforded Dr. Lopez's opinion only "partial weight," stating:

> Alberto G. Lopez, M.D. opined that the claimant is unable to meet competitive standards or has not (sic) useful ability to function in all areas of mental ability and aptitudes needed to perform work, including in areas of understanding, remember, and carrying out instructions and interacting with others. Dr. Lopez further opined that the claimant has marked limitations in activities of daily living, maintaining social functioning, concentrating, persistence, and maintaining pace. Additionally, the claimant will miss more than four days of work per month. Finally, Dr. Lopez opined that the claimant is not able to tolerate the rigors of 8 hours per day or 40 hours per week. The undersigned affords Dr. Lopez's opinion partial weight. Despite his mental impairments the claimant worked for many years with (apparently) the same alleged mental deficits, he is not receiving treatment, and he was able to work an SVP 4 job for many years. Moreover, the claimant's linear thought processes, logical thought content, and cooperative attitude, adequate effort and persistence, adequate memory functioning, and ability to take the bus by himself, drive a car, wash dishes, do laundry, prepare meals, shop for groceries unattended, and dress and groom himself, are at odds

9

> with a finding that the claimant is unable to meet competitive standards or has not (sic) useful ability to function in all areas of mental ability and aptitudes needed to perform work. Furthermore, there is no evidence, such as recurrent medical treatment or chronic fatigue, to support a finding that the claimant would miss 4 days of work per month or be unable to sustain a 40 hour work week.

(Id. at 26.)

Dr. Lopez, however, was aware of plaintiff's prior work experience, and opined that plaintiff's "functioning . . . has now declined." (Id. at 300.) With respect to the ALJ's finding that plaintiff was "not receiving treatment," defendant argues that it was reasonable for the ALJ to rely on plaintiff's failure to "receive mental health treatment." (Def.'s MSJ (ECF No. 17) at 18-19.)

However, Dr. Lopez's opinion found that plaintiff suffered "Intellectual Disability" and an "Unspecified Learning Disorder." (Tr. at 299.) It is not clear what type of treatment the ALJ believed plaintiff should have sought for these impairments, and the ALJ did not provide any specificity. Nonetheless, the Ninth Circuit has

> . . . particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."

Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1299-300 (9th Cir. 1999) (quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)).

The final reason given by the ALJ for rejecting Dr. Lopez's opinion were the same erroneous reasons offered in support of rejecting Dr. Chandler's opinion—conclusory reliance on selective findings, plaintiff's ability to do daily activities, and "no evidence"—which the court rejected above.

Accordingly, for the reasons stated above, the court finds that the ALJ failed to offer a specific and legitimate, let alone clear and convincing, reason for rejecting Dr. Lopez's opinion.

////

////

////

## II. Subjective Testimony

### A. Plaintiff's Subjective Testimony

Plaintiff next challenges the ALJ's treatment of plaintiff's subjective testimony. (Pl.'s MSJ (ECF No. 12) at 12-14.) The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking[.]" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."[6] Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595,

---

[6] In March 2016, Social Security Ruling ("SSR") 16-3p went into effect. "This ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017) (quoting SSR 16-3p) (alterations omitted).

599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, the ALJ summarized plaintiff's testimony as follows:

> The claimant testified to the following: he stopped working due to hernia pain, but he feels that he is unable to work due to back pain. He cannot read or write in English and he is limited to performing basic math. He has a driver's license and drives every day to get away from the house. During the day, he walks around, watches television, and plays with his dogs. He can walk for 30 to 40 minutes at a time, stand for 2 hours at a time, sit for 45 minutes at a time, and lift 5 pounds. He takes pain medications 3 to 4 days a week and smokes Marijuana on a daily basis, but he does not take any medication for mental conditions or for any other physical condition. He can follow a television show, shop for groceries, sweep, and vacuum. He can get along with others, but he typically keeps to himself and is easily frustrated.

(Tr. at 22.)

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reason explained in [the] decision." (Id. at 23.) The ALJ then stated that, with respect to plaintiff's "statements about the intensity persistence and limiting effects of his symptoms the evidence of record does not fully support the severity the claimant alleges." (Id.) The ALJ then acknowledged that the record revealed that plaintiff had intellectual disability, unspecified learning disorder, degenerative disc disease of the cervical and lumbar spines, and mild degenerative disc disease of the thoracic spine with scoliosis. (Id.)

The ALJ then proceeded to discuss the opinions of Dr. Chandler and Dr. Lopez discussed above, and the remainder of the medical opinion evidence without providing any explanation or

12

support for the ALJ's vague and conclusory findings with respect to plaintiff's testimony. The ALJ then concluded, again in a vague and conclusory manner, that "the medical evidence of record does not fully support the severity the claimant alleges but it does support the above residual functional capacity." (Id. at 24.)

The ALJ repeated this pattern with respect to plaintiff's "mental limitations," stating:

> As for the claimant's mental limitations, the evidence reveals that the claimant has intellectual disability and unspecified learning disorder. Evaluations reveal that that the claimant's verbal Comprehension, perceptual reasoning, and processing speed scores are in the borderline range and his working memory score and overall IQ are in the extremely low range. Additionally, his performance on the Trail-Making indicates that he has difficulties in the areas of visual scanning speed and concentration. However, the claimant's performance on the WSM-IV fell within the average range for all four categories, suggesting adequate memory functioning. Additionally, the claimant has linear thought processes, logical thought content, and cooperative attitude. Moreover, he displayed adequate effort and persistence. Therefore, despite his abnormal findings, the claimant is able to perform simple, repetitive tasks and have no more than occasional in-person interaction with the public.

(Id. at 25.)

The ALJ then again discussed the opinions of Drs. Chandler and Lopez before stating "the above residual functional capacity assessment is supported by the objective evidence and medical findings established in this record," and that "[t]o the extent that the claimant alleges she (sic) cannot work within the residual functional capacity the undersigned find the allegations not entirely supported based upon the above discussions." (Id. at 26.)

However, "after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity" of the symptoms. Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005); see also Putz v. Astrue, 371 Fed. Appx. 801, 802-03 (9th Cir. 2010) ("Putz need not present objective medical evidence to demonstrate the severity of her fatigue."); Lingenfelter, 504 F.3d at 1036 ("the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged."); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) ("If an adjudicator could reject a claim for disability simply because a claimant fails to produce medical evidence

supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings.").

Moreover, as noted above, to reject plaintiff's testimony the ALJ needed to offer specific, clear, and convincing reasons. "This is not an easy requirement to meet[.]" Garrison, 759 F.3d at 1015. Here, the ALJ offered only vague and conclusory findings. In this regard, it is entirely unclear what specific testimony the ALJ accepted, what specific testimony the ALJ rejected, and what specific evidence the ALJ relied on in support of the decision to reject which specific portions of plaintiff's testimony. For example, it is entirely unclear why the ALJ's notation that plaintiff "displayed adequate effort and persistence," supports the ALJ's conclusion that plaintiff can tolerate occasional in-person interaction with the public. (Tr. at 25.)

Accordingly, the ALJ failed to provide a clear and convincing reason for rejecting plaintiff's testimony. Plaintiff, therefore, is also entitled to summary judgment as to this claim.

## III.   Lay Witness Testimony

Plaintiff also challenges the ALJ's treatment of the lay witness testimony. (Pl.'s MSJ (ECF No. 14) at 13-15.) The testimony of lay witnesses, including family members and friends, reflecting their own observations of how the claimant's impairments affect his activities must be considered and discussed by the ALJ. Robbins, 466 F.3d at 885; Smolen, 80 F.3d at 1288; Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). Persons who see the claimant on a daily basis are competent to testify as to their observations. Regennitter, 166 F.3d at 1298; Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give reasons germane to each particular witness in doing so. Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.

The mere fact that a lay witness is a relative of the claimant cannot be a ground for rejecting the witness's testimony. Regennitter, 166 F.3d at 1298; Smolen, 80 F.3d at 1289. Moreover, "the reasons 'germane to each witness' must be specific." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006)). However, the ALJ may cite the same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar. See Valentine, 574 F.3d at 694 (approving

| | |
|---|---|
| 1 | rejection of a third-party family member's testimony, which was similar to the claimant's, for the |
| 2 | same reasons given for rejection of the claimant's complaints). |

Here, the ALJ discussed the lay witness testimony offered by plaintiff's sister. (Tr. at 22.) That testimony described plaintiff as "unable to read or write," unable to prepare meals," needing assistance to manage finances, and spending most time alone. (Id.) The ALJ purportedly afforded this testimony "some weight," but did not provide any further elaboration. (Id. at 23.) The ALJ then simply stated that the lay witness was "not a medical expert" and that the testimony did "not amount to evidence that would change the determinations made" in the decision. (Id.) The ALJ added that "the degree of limitation contemplated here is inconsistent with the objective findings" discussed elsewhere in the opinion. (Id.)

First, because the ALJ's rejection of plaintiff's testimony was erroneous, the ALJ cannot rely on the rejection of plaintiff's testimony to provide a germane reason to reject the lay witness testimony. See generally Robbins v. Social Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) ("Because the ALJ did not make a legally sufficient adverse credibility finding with regard to Robbins's own testimony, we cannot say with respect to Rodney's testimony that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").

Moreover, that the lay witness is not a medical expert is not a germane reason. A lay witness by definition is not a medical expert. Nor can the ALJ rely on vague and conclusory references to inconsistencies with objective findings. The ALJ failed to provide any specificity and, therefore, the court cannot determine if the ALJ provided a germane reason for rejecting the lay witness testimony.

Accordingly, plaintiff is also entitled to summary judgment on this claim.

**IV.     Step-Five Error**

Finally, plaintiff challenges the ALJ's finding at step five of the sequential evaluation. (Pl.'s MSJ (ECF No. 14) at 15.) At step five of the sequential evaluation, "the Commissioner has the burden 'to identify specific jobs existing in substantial numbers in the national economy that a claimant can perform despite his identified limitations.'" Zavalin v. Colvin, 778 F.3d 842, 845

(9th Cir. 2015) (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)) (alterations omitted). The ALJ can meet her burden by either taking the testimony of a Vocational Expert ("VE") or by referring to the grids. See Lounsburry v. Barnhart, 468 F.3d 1111, 1114-15 (9th Cir. 2006). Here, the ALJ relied on testimony from a VE. (Tr. at 27.)

While an ALJ may pose a range of hypothetical questions to a VE based on alternate interpretations of the evidence, the hypothetical question that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical question that is predicated on the ALJ's final residual functional capacity assessment, ("RFC"), must account for all of the limitations and restrictions of the particular claimant. Bray, 554 F.3d at 1228. "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Id. (citation and quotation marks omitted); see also Taylor v. Commissioner of Social Sec. Admin., 659 F.3d 1228, 1235 (9th Cir. 2011) ("Because neither the hypothetical nor the answer properly set forth all of Taylor's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings.").

Because of the ALJ's errors with respect to the treatment of the opinions of Drs. Chandler and Lopez, plaintiff's testimony, and the lay witness testimony, the ALJ's questioning of the VE did not account for all of plaintiff's limitations. Accordingly, plaintiff is also entitled to summary judgment on the claim that the ALJ committed an error at step five of the sequential evaluation.

## CONCLUSION

After having found error, "'[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" Trevizo, 871 F.3d at 682 (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether

////

////

16

> claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020.

Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, further administrative proceedings would serve no useful purpose as the record contains ample evidence, testimony, and medical opinion evidence. The ALJ failed to provide legally sufficient reasons for rejecting the opinions of two examining physicians, plaintiff's testimony, and the corresponding lay witness testimony. If the improperly discredited evidence— taken separately let alone cumulatively—were credited as true the ALJ would be required to find plaintiff disabled on remand, as evidenced by the VE's testimony. (Tr. at 73.) "Such a finding by the vocational expert is a sufficient basis upon which to remand for determination of benefits." Wechel v. Berryhill, 713 Fed. Appx. 559, 562 (9th Cir. 2017). Furthermore, the record as whole does not create serious doubt as to whether plaintiff is disabled. See Moe v. Berryhill, 731 Fed. Appx. 588, 592 (9th Cir. 2018) ("Remand for immediate award of benefits is appropriate in this case because all three factors of the credit-as-true rule are satisfied, leaving no 'serious doubt' as to Moe's disability.").

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 17) is denied;

3. The Commissioner's decision is reversed;

////

4. This matter is remanded for the payment of benefits; and

5. The Clerk of the Court shall enter judgment for plaintiff and close this case.

Dated: March 10, 2020

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\bromley2718.ord